## Case No. 11,164.

### PIKE et al. v. WASSELL et al.

[2 Dill. 555.] [1]

Circuit Court, E. D. Arkansas. 1873.[2]

CONFISCATION ACT — EFFECT OF FORFEITURE OF LIFE ESTATE IN LANDS OF THE OFFENDER.

1. Under the confiscation act of congress of July 17, 1862 (12 Stat. 589), no interest in land could be forfeited which would extend beyond the life of the offender.

2. Where, under said act, a decree was entered condemning as forfeited real estate for and during the life of the owner thereof, his children cannot, during his life-time, file a bill to question the validity of subsequent sales on execution against the father of his reversionary estate in the property.

3. A decree condemning as forfeited an estate for the life of the owner does not immediately cast the entire beneficial estate in the property upon his children so as to make them, while he is still living, his heirs.

The plaintiffs [Luther H. Pike and others] describe themselves in the bill of complaint as "the children and heirs-at-law of Albert Pike, who was formerly a citizen of the state of Arkansas, but is now a citizen of the state of Tennessee, residing in the city of Washington," in the District of Columbia. The bill sets forth that on the 17th day of July, 1862, their father was seized, in fee of certain real estate in the city of Little Rock, and that at the date of the passage by congress of the confiscation act of July 17th, 1862 (12 Stat. 589), and subsequently the said Albert Pike was a general in the Confederate army, and that after his resignation as such officer he afterwards, to-wit, on the 16th day of February, 1865, acted as judge of the supreme court of the state of Arkansas, after the passage by that state of the ordinance of secession, and at a time when the said state was acting under the constitution of the Confederate States; that on the said 16th day of February, 1865, the marshal of the United States seized the real estate of the said Albert Pike, described in the bill, under the said confiscation act, and on due proceedings had the district court of the United States for the Eastern district of Arkansas, on the 5th day of April, 1865, entered a decree condemning and forfeiting to the United States the interest and estate of the said Albert Pike in and to said real estate for and during the natural life of the said Albert Pike, and directing the same to be sold for the benefit of the United States. It is shown that said life interest was subsequently May 1st, 1865, sold and conveyed by the marshal. About the time said real estate was so seized, several actions at law were commenced by attachment in the state court against Albert Pike, and at the September term, 1865, judgments were rendered therein against him, on an appearance entered by his son, Luther H. one of the present complainants. The bill avers that this appearance was never authorized by the said Albert, and that the defendant, John Wassell, fraudulently induced the said Luther H. to enter it, and waive service by publication. At the April term, 1867, the real estate of the said Albert Pike, which had been seized as aforesaid by the marshal and condemned as forfeited by the United States district court, being the same which had been attached in said actions in the state court, was sold on executions issued on said judgments rendered in the state court, to the defendant. It is averred in the bill that this sale was for an inadequate price, but this is denied in the answer.

The bill contains also averments tending to show an equity or right in favor of Albert Pike or his heirs, if the plaintiffs are such, arising out of an alleged agreement between the defendant, Wassell, and the said Luther H. Pike, acting as attorney of Albert Pike, in respect to the said judgments and execution sales thereunder, but in the view taken by the court it is not necessary to state this portion of the case at any greater length. The defendant subsequently became the owner of the life estate or interest which was sold by the marshal under the confiscation decree, and claims thus to be seized in fee of the whole estate in the lots in controversy. The bill admits the validity of the confiscation proceedings, and that the life estate of the said Albert Pike was sold, and this is also admitted by the defendant. But the bill denies the validity of the judgments against Albert Pike, rendered by the state court, and the validity of the execution sales and sheriff's deeds thereunder. On the other hand, the answer, which is made also a cross bill, insists upon the validity of said judgments and execution sales. The bill proceeds on the theory that the plaintiffs, as the heirs-at-law of Albert Pike, are the owners of the reversion after the determination of the life estate, condemned and sold by the United States, and the object of the bill is to compel the defendant, as the tenant for life, out of the rents, to keep down the taxes, and properly to care for and preserve the property.

The pleadings and exhibits are voluminous, but this outline of the case is sufficient for an understanding of the question decided by the court.

A. H. Garland and Dodge & Johnson, for plaintiffs.

T. D. W. Yonley and Wassell & Moore, for defendants.

DILLON, Circuit Judge. Both parties agree that Albert Pike was seized in fee of

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [Reversed in 94 U. S. 711.]
19 FED. CAS. — 44

the lots in controversy, and that the United States condemned and sold only an estate therein for and during his natural life. Both parties admit that the proceeding was valid, and that to this extent the title of Albert Pike was divested and is now in the defendant. It is stated in the bill that Albert Pike is still living. The substantial point in dispute is as to the ownership of the reversion, or of the estate other than life estate which was forfeited to and sold by the United States under the act of July 17th, 1862. The defendant claims this reversionary estate under the execution sales by the sheriff. The plaintiffs claim the same estate as "the children and heirs-at-law" of their father. As the plaintiffs claim only as heirs, it follows that if they are not now the heirs of Albert Pike, the foundation of the relief sought by the bill fails. Their case rests, and rests alone, upon this proposition. This their counsel concede in argument. They insist that the decree of condemnation and sale, though it was but of the life estate of Albert Pike, deprived him of all beneficial interest in the property and cast the descent or effected a settlement of it upon his lawful heirs, the same as though he were dead, and that it does this so effectually as to disable the father or ancestor from making any conveyance of the reversion to others, or from making any disposition of it by will, and so to prevent his creditors from seizing and selling it upon judicial process. Accordingly the plaintiffs' counsel in their printed argument say: "The theory of the bill is, the confiscation swept away Albert Pike's interest in the property, but in view of the constitutional provision as to attainder, the right of his heirs was protected, and upon them, under this constitutional provision, the confiscation threw the property, after his death, regardless of all events that occurred after he, Albert Pike, entered the army against the United States. In other words, the law not only divests him of his estate for life, but casts the descent and fixes it upon his heirs."

The proceedings to condemn the property were had under the confiscation act, and under that no interest in real estate could be forfeited which would outlast the life of the offender. Bigelow v. Forrest, 9 Wall. [76 U. S.] 339. Not only so, but nothing was condemned and sold, except an interest for the life of Albert Pike.

No authoritative construction of the confiscation act has been produced to sustain the theory upon which the bill rests, and upon the best consideration I have been able to give to the subject, I find nothing to support it, either in the language of the act, or in its policy, or in the general principles of the law. It is a solecism to say that the plaintiffs are the heirs of their father, who is still living; and if they were or could be such heirs, it would be remarkable if they would take the property by operation of law, discharged of their ancestor's debts.

But I place my decision upon the sole ground that the plaintiffs, during the life of their father, are not his heirs, and are not now entitled to be considered as the reversioners or possessed of any estate in this property. This view, if sound, is decisive of the case, and on this ground alone the bill will be dismissed. If the judgments in the state court, or the execution sales thereunder, are void, they may be attacked by Albert Pike. And so if there is any equity or right, by reason of the alleged understanding or agreement with the defendant, Wassell, it exists in favor of Albert Pike, and cannot be asserted by the plaintiffs as his heirs during his life.

As the plaintiffs have no present interest in the property, and may never be the heirs of the said Albert Pike, it follows that the cross bill founded upon the asserted validity of the execution sales presents matters which cannot be adjudicated between the parties to this suit. The result is that a decree must be entered dismissing both the original and cross bill. Decree accordingly.

[On appeal to the supreme court, the decree of this court was reversed. 94 U. S. 711.] As to validity of proceedings and decrees under the act of July 17, 1862, see Brown v. Hiatt [Case No. 2,011]; on appeal, 15 Wall. [82 U. S.] 177.